IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

BETHANY M. HALL,
     Plaintiff,

v.                                                                            Civil No. 3:25cv186 (DJN)

A. SCOTT FLEMING, *in his official
capacity as Director of the State Council of
Higher Education for Virginia,*
     Defendants.

### MEMORANDUM ORDER
**(Granting Motion to Dismiss)**

Plaintiff Bethany M. Hall ("Plaintiff") brings this action against Defendant A. Scott

Fleming ("Defendant"), in his official capacity as Director of the State Council of Higher

Education for Virginia, asserting a claim pursuant to 42 U.S.C. § 1983 for violation of the Free

Exercise Clause of the United States Constitution ("Free Exercise Clause").  Specifically,

Plaintiff contends that Defendant's "refusal to provide a generally applicable government

benefit" in the form of a tuition assistance grant "solely because of religion violates the Free

Exercise Clause." (ECF No. 1 ("Compl.") at 1–2.)  This matter comes before the Court on

Defendant's Motion to Dismiss (ECF No. 9 ("Motion").)  For the reasons set forth below, the

Court hereby GRANTS Defendant's Motion to Dismiss (ECF No. 9).

### I.       BACKGROUND

At this stage, the Court must accept as true the facts set forth in the Complaint.  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  Against this backdrop, the Court accepts the following facts

as alleged for purposes of resolving the instant Motion.

Plaintiff is a Virginia citizen and a full-time sophomore student at Liberty University ("Liberty") in Lynchburg, Virginia. (Compl. ¶ 5.) Defendant is the Director of the State Council of Higher Education for Virginia ("SCHEV") and stands responsible for distribution and retraction of grants under Virginia's Tuition Assistance Grant Program ("VTAG Program"). (*Id.* ¶ 6.) Defendant administers the Program and is authorized to issue regulations for its operation. (*Id.* ¶¶ 7–8.) Virginia Code Section 23.1-628 limits eligibility for VTAG grants to "nonprofit private institutions of higher education whose primary purpose is to provide collegiate, graduate, or professional education and not provide religious training or theological education." (*Id.* ¶ 10.) Plaintiff alleges that although Liberty provides courses in religious training and theological education, Defendant and SCHEV have considered Liberty to be an "eligible institution" for the VTAG Program. (*Id.* ¶¶ 11–13.) The VTAG Program limits grants to students "obligated to pay tuition as full-time undergraduate, graduate or professional students" while pursuing "educational programs other than those providing religious training or theological education." (*Id.* ¶ 14 (quoting Va. Code § 23.1-631).) Plaintiff alleges that, at all times relevant to her Complaint, she was an eligible student at an eligible institution under the Program. (*Id.* ¶ 15.)

During her senior year of high school, Plaintiff applied and received admission to Liberty for the 2023-2024 school year. (*Id.* ¶ 21.) On January 30, 2023, she applied for VTAG Program assistance. (*Id.* ¶ 22.) On February 8, 2023, Liberty's Financial Aid Office notified Plaintiff that she had been accepted to receive the maximum VTAG grant, up to $5,000. (*Id.* ¶ 23.) In June 2023, Plaintiff identified her intended major as "Music Education: Choral," which does not constitute a VTAG-ineligible CIP Code 39 program. (*Id.* ¶ 24.) In early August 2023, Plaintiff informed Liberty that she intended to change her major to "Youth Ministries." (*Id.* ¶ 25.) Subsequently, on August 10, 2023, Liberty's Financial Aid Office informed Plaintiff that she had

become ineligible for VTAG assistance, because "Youth Ministries" constitutes a CIP Code 39 program. (*Id.*) In late August 2023, Plaintiff again changed her major to "Christian Leadership and Church Ministries," which also constitutes an ineligible CIP Code 39 program. (*Id.* ¶ 26.) Then, in mid-October 2023, she informed Liberty that she had changed her major to "Music and Worship," with a focus on "Youth Ministries." (*Id.* ¶ 28.) On October 31, 2023, the Financial Aid Office informed Plaintiff that "Music and Worship" is an ineligible CIP Code 39 program, and she subsequently did not receive a VTAG grant for the 2023-2024 school year. (*Id.* ¶ 29.)

Plaintiff completed her first year at Liberty and remains enrolled as a full-time student with a "Music and Worship" major for the 2024-2025 school year. (*Id.* ¶ 30.) Her VTAG Program grant has never been reinstated, and she has never rescinded her application. (*Id.*) As a result, Plaintiff "has personally paid Liberty [] the amounts that the rescinded VTAG Program grant would otherwise have covered." (*Id.* ¶ 31.) On December 20, 2024, Liberty's Financial Aid Office confirmed that "Music and Worship" remains an ineligible major for VTAG grants. (*Id.* ¶ 32.) She has not received a grant for the 2024-2025 school year. (*Id.*) Plaintiff alleges that she "remains eligible for a VTAG Program grant in all respects other than the religious nature of her major." (*Id.* ¶ 35.) She states that she has forfeited the grant rather than change her major "because of her belief and conviction that God is calling her to minister through music and worship to youth." (*Id.* ¶ 36.) Plaintiff further alleges that this violation of her free exercise of religion "is per se an irreparable injury." (*Id.* ¶ 37.)

Plaintiff's Complaint asserts a single count pursuant to 42 U.S.C. § 1983 for violation of the Free Exercise Clause. (*Id.* ¶¶ 39–51.) Specifically, Plaintiff alleges that the Free Exercise Clause of the First Amendment, made applicable to the states via the Fourteenth Amendment, prevents state actors from denying generally applicable benefits to an individual solely because

of her religious practice or the religious nature of the benefit's intended use. (*Id.* ¶¶ 43–47.) Plaintiff contends that Defendant's retraction of her VTAG grant and her ineligibility for assistance violates the Free Exercise Clause. (*Id.* ¶ 48.) Plaintiff also argues that *Locke v. Davey*, 540 U.S. 712 (2004), "was wrongly decided and is inconsistent with" the Supreme Court's later decisions. (*Id.* ¶ 49.) Plaintiff contends that these decisions "effectively abrogated and overruled *Locke*" and thus "*Locke* should now be explicitly overruled." (*Id.* ¶¶ 49–50.)

In her Prayer for Relief, Plaintiff seeks the following: (1) a declaration that Virginia Code Section 23.1-631(A) violates the Free Exercise Clause rights of students pursuing religious training or theological education; (2) a declaration that Virginia Administrative Code Section 40-71-10 is unconstitutional, because it classifies programs providing religious training or theological education as ineligible for VTAG grants; (3) an injunction enjoining Defendant from withholding VTAG funds from Plaintiff due to her selection of major; (4) an injunction requiring Defendant to pay all amounts equal to the VTAG funds that she would have received but for her major selection from the 2023-2024 academic year to the present; (5) attorneys' fees and costs; and (6) all other just and equitable relief. (*Id.* at 11.) Plaintiff filed her Complaint on March 7, 2025. (ECF No. 1.) Defendant timely filed the instant Motion on April 14, 2025. (ECF No. 9.) On April 24, 2025, Plaintiff filed her Opposition to the Motion. (ECF No. 12.) Defendant then filed his Reply on April 29, 2025. (ECF No. 13.) The matter now stands ripe for judicial review.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint; it does not serve as the means by which a court will resolve factual contests or determine the merits of a claim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court accepts the well-pleaded allegations in the complaint as true and

views the facts in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Under Federal Rule of Civil Procedure 8(a), a complaint must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. The facts must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). On a 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

### III.    ANALYSIS

In his Motion, Defendant asserts that the Supreme Court's decision in *Locke v. Davey*, 540 U.S. 712 (2004) "is on all fours with the facts of this case and squarely forecloses [Plaintiff's] claim." (ECF No. 10 ("Mem.") at 7.) Plaintiff asserts that *Locke* "was wrongly decided and is inconsistent with" the Supreme Court's later decisions and contends that "*Locke* should now be explicitly overruled." (Compl. ¶¶ 49–50.) Nevertheless, Plaintiff effectively concedes that her situation aligns with the one faced by the undergraduate student pursuing a religious vocation major in *Locke*, and she expressly agrees with Defendant's contention that "*Locke* is still good law, and it is binding on this Court." (ECF No. 12 ("Opp.") at 1 (quoting Mem. at 7).) Because *Locke* remains binding Supreme Court precedent and this Court lacks the authority to overrule such precedent, the Court hereby GRANTS Defendant's Motion to Dismiss (ECF No. 9).

A brief review of *Locke* and the Supreme Court's subsequent Free Exercise decisions compels this Court's dismissal of Plaintiff's Complaint. In *Locke*, Joshua Davey ("Davey") challenged a Washington statute which provided tuition assistance for college students pursuing non-religious degrees. 540 U.S. at 718. Davey, who "decided to pursue a double major in pastoral ministries and business management/administration," was informed by his college's director of financial aid that he could not use the scholarship for his theology degree. *Id.* at 717. Citing state constitutions from "around the time of the founding" that included "formal prohibitions against using tax funds to support the ministry," the Supreme Court found nothing "that suggests animus toward religion" in the Washington statute and could not "conclude that the denial of funding for vocational religious instruction alone is inherently constitutionally suspect." *Id.* at 723, 725. Because the state "merely chose[] not to fund a distinct category of instruction" and did "not require students to choose between their religious beliefs and receiving a government benefit," the law did not violate the Free Exercise Clause. *Id.* at 720–21.

Here, Plaintiff's situation stands directly analogous to Davey's. Plaintiff, like Davey, opted to pursue a major in a religious vocation while completing her undergraduate studies. (Compl. ¶¶ 25–26, 28, 30); *Locke*, 540 U.S. at 717. As a result of this choice, Plaintiff, like Davey, became ineligible for state tuition assistance. (Compl. ¶¶ 25–26, 29–30, 32); *Locke*, 540 U.S. at 717. Both Plaintiff and Davey brought suits contending that laws barring state tuition assistance for students pursuing majors in a religious vocation violate the Free Exercise Clause. (Compl. ¶¶ 39–51); *Locke*, 540 U.S. at 718. Further, the state laws at issue in both cases allow tuition assistance for students attending religious *universities* or taking religious *courses*, as long the funding does not go toward religious *majors*. (Compl. ¶¶ 12–13); *see* 8 Va. Admin. Code § 40-71-10 (allowing VTAG grant for double-major program including religious vocational

studies under specific conditions); *Locke*, 540 U.S. at 724 & n.8 (noting that "Washington has also been solicitous in ensuring that its constitution is not hostile towards religion," including by allowing students to receive funding while attending religious schools). While Plaintiff may contend that *Locke* "was wrongly decided," the factual and legal circumstances of her case mirror those presented in that binding Supreme Court precedent. (Compl. ¶ 49.)

Furthermore, contrary to Plaintiff's assertion that the Supreme Court's subsequent Free Exercise decisions "effectively abrogated and overruled *Locke*," these cases instead reaffirm *Locke*'s holding and support its application to the instant case. (Compl. ¶ 49.) First, in *Trinity Lutheran Church of Colombia, Inc. v. Comer*, 582 U.S. 449 (2017), the Court distinguished *Locke* while holding that a Missouri law that disqualified churches and religious organizations from receiving grants under a playground resurfacing program violated the Free Exercise Clause. *Id.* at 464–67. Specifically, the Court noted that "Davey was not denied a scholarship because of who he *was*; he was denied a scholarship because of what he proposed *to do*—use the funds to prepare for the ministry." *Id.* at 464. By contrast, Missouri's law impermissibly denied a Lutheran church funding "simply because of what it is—a church." *Id.* In essence, the church was required to "renounce its religious character in order to participate in an otherwise generally available public benefit program," while Davey was free to attend a religious college and take religious courses as long as he did not use funding "to pursue a degree in [devotional theology]." *Id.* at 465–66. In distinguishing *Trinity Lutheran* from *Locke*, the Supreme Court did not abrogate its precedent; rather, the Court reinforced that "opposition to . . . funding to support church leaders lay[s] at the historic core of the Religion Clauses." *Id.* at 465.

In *Espinoza v. Montana Department of Revenue*, 591 U.S. 464 (2020), the Supreme Court again distinguished, without overruling, *Locke* in holding that application of Montana's

constitutional "no-aid provision" to prohibit state tuition assistance at religious schools violated the Free Exercise Clause. *Id.* at 468, 488–89. The Court highlighted two key distinctions between *Locke* and *Espinoza*. *Id.* at 479–83. First, while the Washington law in *Locke* had "merely chosen not to fund a distinct category of instruction" — religious vocational training — Montana's no-aid provision "bar[red] all aid to a religious school simply because of what it is, putting the school to a choice between being religious or receiving government benefits." *Id.* at 479–80; *Locke*, 540 U.S. at 721. "Second, *Locke* invoked a 'historic and substantial' state interest in not funding the training of clergy." *Espinoza*, 591 U.S. at 480 (quoting *Locke*, 540 U.S. at 725). By contrast, "no comparable 'historic and substantial' tradition support[ed] Montana's decision to disqualify religious schools from government aid." *Id.* Once again, rather than overrule *Locke*, the Supreme Court in *Espinoza* reinforced its holding that a prohibition on the use of state funds for religious vocational education did not violate the Free Exercise Clause.

Lastly, in *Carson as next friend of O.C. v. Makin*, 596 U.S. 767 (2022), the Supreme Court again emphasized that "the funding in *Locke* was intended to be used to prepare for the ministry." *Id.* at 788. "Funds could be and were used for theology courses; only pursuing a 'vocational religious' degree was excluded," and therefore the Washington program did not violate the Free Exercise Clause. *Id.* (quoting *Locke*, 540 U.S. at 725). However, the Court noted that "*Locke* cannot be read beyond its narrow focus on vocational religious degrees to generally authorize the State to exclude religious persons from the enjoyment of public benefits on the basis of their anticipated religious use of the benefits." *Id.* at 789. As a result, the Court held that Maine's prohibition on tuition assistance payments to students who chose to attend sectarian secondary schools violated the Free Exercise Clause. *Id.*

8

Thus, review of the Supreme Court's recent Free Exercise jurisprudence clearly rebuts Plaintiff's contention that these cases "effectively abrogated and overruled *Locke*." (Compl. ¶ 49.)  Rather, as Defendant points out, "the Supreme Court has repeatedly affirmed that *Locke* is good law that permits states to decline to fund religious training." (Mem. at 9.)  Following these cases, prohibitions on state tuition assistance for religious vocational training, such as Plaintiff's chosen course of study at Liberty, remain permissible under the Free Exercise Clause.  Even if the Court agreed with Plaintiff — which it does not — that the Supreme Court "effectively abrogated" *Locke* in these recent cases, the Court stands bound to follow binding Supreme Court precedent that remains good law.  *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) (holding that lower courts "should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions").  Plaintiff suggests that while the Supreme Court has never explicitly overturned *Locke*, it has "drop[ped] hints that it has nonetheless abandoned that precedent" and its underlying rationale.  (Opp. at 2.)  However, as the Fourth Circuit has noted, lower courts "must simply apply the[] commands" of Supreme Court precedent.  *Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021).  Quite simply, "[i]t is beyond [this Court's] power to disregard a Supreme Court decision, even if [it appeared that] the Supreme Court is soon to overrule it."  *Id.*

Accordingly, applying the binding Supreme Court precedent established in *Locke*, the Court finds that Defendant's application of the VTAG Program does not violate the Free Exercise Clause by prohibiting the use of state funds for Plaintiff's religious vocational studies. Therefore, Plaintiff fails to state a claim and the Court GRANTS Defendant's Motion.

## IV.    CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendant's Motion to Dismiss (ECF No. 9) and DISMISSES this case WITH PREJUDICE.  Because the Court must apply the Supreme Court's binding precedent in *Locke*, any amendment to Plaintiff's Complaint would be futile.  Accordingly, the Court does not grant leave to amend and this Order qualifies as final and appealable.  *See Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022) (holding that an order dismissing a case without leave to amend is final and appealable).  Should Plaintiff desire to appeal, written notice of appeal must be filed with the Clerk of the Court within thirty (30) days of the date of entry hereof.  Failure to file a notice of appeal within that period may result in the loss of the right to appeal.  Fed. R. App. P. 4.

The Court DIRECTS the Clerk's Office to close this case.

This case is now CLOSED.

Let the Clerk file a copy of this Memorandum Order electronically and notify all counsel of record.

It is so ORDERED.

                                                            _____/s/_____
                                                            David J. Novak
                                                            United States District Judge

Richmond, Virginia
Dated:  May 9, 2025

10